The last case on the docket is In Re the Estate of Grace, Dukes 524-0645, and this is a bit unusual in that only the appellant is represented for argument. We've been notified that the appellee is not going to appear. So if you would like to proceed, Mr. Martin. Yes, thank you very much. Good morning. May it please the Court. My name is Eric Martin. I'm with the Norton Ralph Rose Fulbright firm, and I represent Wells Fargo and Brian King. This Court should reverse the trial court's denial of the motion to compel arbitration for two primary reasons. One, the estate, the Estate of Grace, Dukes, is bound to arbitrate based upon the arbitration provision and the arbitration provision. Now, the reason that the Court should reverse the trial court's denial of the motion to compel arbitration for two primary reasons is because the direct benefits doctrine provides that you can't sue for the benefits of a contract and disclaim other provisions of it, such as the arbitration provision. Now, Your Honors, this is a case where Wells Fargo and Brian King were caught in the middle of an unfortunate family situation that does arise from time to time where you have disputes between the siblings. In this case, there were two daughters who were at odds with their brothers. And as a result, the two daughters initially filed suit in Vermillion County, later stayed that action and filed as estate action. But nonetheless, it's really a dispute between the two daughters and the two sons. And in fact, that matter settled last week, and that's why I'm here by myself today. The only remaining portion of this is the Wells Fargo-Brian King portion and the question of whether the remaining claims should be decided either in court or in arbitration. Well, in this case, they should be. So what's just the remaining claim now? Yes, so there were two claims, Your Honor, that were asserted against Mr. King in the lower court. They were breach of fiduciary duty and aiding and abetting financial exploitation. I don't think that that aiding and abetting claim will survive now that the brothers are going to be out of the case. But those are the two claims that are remaining, Your Honor. Do you anticipate that anyone will dismiss their appeal in this case? Dismiss the appeal, Your Honor? Their portion of the appeal. Will any portion of the appeal be dismissed as a result of the settlement last week? I don't believe so, Your Honor. Your Honor, I think the question of whether the estate can pursue the claims against Wells Fargo and Brian King in what form, I think that will remain. So that is true. And as we explained in our papers, we filed a motion to compel arbitration. And the motion to compel arbitration included an affidavit from Wells Fargo. The affidavit attached the advisory services agreement. The advisory services agreement has a very broad arbitration clause. Any and all controversies, even controversies regarding whether claims are arbitrable, all of those are encompassed within that broad arbitration provision. And there's no doubt that if Grace Fuchs had sued based upon something in her account that she perceived was amiss, that claim would have been subject, no doubt, to arbitration under the financial industry regulatory authority of FINRA. And there's no doubt about that. The question in this case is now when the estate sues, is the estate also bound by that? And under general principles, it is. Why is it under general principles? What general principles are you talking about? Yes, Your Honor. If you look at the Carter case, which is the 2012 Illinois Supreme Court case, the Carter case was a case involving a nursing home. And whether or not a special administrator, when the special administrator brought those claims, was he required to arbitrate those or would they go to court? And it was one where initially the trial court denied arbitration, initially the appellate court denied arbitration, went up to the Illinois Supreme Court. I mean, Illinois Supreme Court said that as for those claims, where they accrued during the time of the decedent's life. Survival Act claims. Exactly, exactly. The Survival Act claims that, yes, those go to arbitration. Essentially, the special administrator would be acting in the stead of the decedent, and those go to arbitration. The wrongful death did not, because that did not occur until actual death. But in the Carter case, as I recall it, the court found that the special administrator had the authority to sign. The decedent had signed the document, and there was authority there to bring the cause of action. Here, there seems to be a problem in the definition of the word you, as I look at it. You seems to apply to the signatory to the agreement, which the estate was not. The estate, however, steps into the shoes of the person that signed. But this person who signed was a power of attorney in this case. That was Robin Dukes. That's correct. So there were two documents at play. There's a transfer on death, which was signed by the actual decedent, and then there is the advisory agreement. Let me interrupt you there. That document that you just described that was allegedly signed by the two individuals is in some dispute as to who signed it. Correct? The allegations, that's correct. In the underlying complaint, there were allegations about that and the signature of that. That is correct. But there was no evidentiary hearing on that in terms of our motion to call arbitration. But we do know that Robin Dukes, using a power of attorney, signed on behalf of the two individuals, the dukes, let's call them. Yes. There's so many dukes in this case. There's a lot of dukes, yes. So the word you, as it refers to the arbitration, does not name the estate in this case. We're going to call them the sisters. Right. The third-party beneficiaries, the direct beneficiaries of the estate. And, Your Honor, you're referring to the — The sisters had no knowledge of the transfer on debt document, right? That is the allegation, that they did not have knowledge of that. That is correct. Instead of me interrupting you, why don't you tell me why the trial court didn't get it right? Absolutely, Your Honor. So the trial court essentially went past the issue of the fact that, again, the estate is going to step into the shoes. This is a case where the cause of action did occur during the time because the two causes of action, breach of fiduciary duty, aiding and abetting financial exploitation, all of those would occur during the lifetime of Ms. Dukes. And so it's not like wrongful death where it occurs after. And in that case, with the two-part Carter test, absolutely it's required to arbitrate those cases. Now, even beyond that, into our second — I'm sorry, Your Honor. I'm not following you on that one. Well, the estate is — In the nursing home case, you're talking about negligent medical malpractice to a nursing home resident under the Survival Act. Yes. How do these claims relate to that kind of claim? They relate in the sense that all of the actions from which they arose occurred before death. So the breach of fiduciary duty claim has allegations about should have known about a forged signature, should have understood that the parents were in a declining state. All of those allegations are in there that Mr. Cain did not take certain actions during the lifetime of the decedents. That's the key distinction, did not take — during the lifetime of the decedents. And same thing with aiding and abetting financial exploitation. Everything occurred before. The most recent nursing home case dealing with arbitration talks about the power of a — health care power of attorney and whether or not a daughter signing the power of — under a power of attorney can be forced to arbitrate. And the court said no. Are you familiar with that case? Which case is that, Your Honor? I don't recall the name, but it's a very recent case out of the First District that says the power of attorney does not authorize the decedents to bring the survival count. In other words, Odin v. — it's Odin v. Carter, I think. That's correct, yes. Odin v. Carter says you can bring a survival action, but you've got to have the authority when you sign the document. The most recent case that I'm thinking of, and I don't have the name of it, I apologize, says there was no authority under a power of attorney in a nursing home context. This case comes down to whether or not there was the authority to sign such that arbitration became binding, right? That's always an issue as to whether there's a binding arbitration provision. In this case, there was no evidentiary hearing. I've had challenges to arbitration provisions. For example, a Hollingshead case that incited in our materials. In that case, there was a full evidentiary hearing about whether the individuals were competent and so forth. That's not this case. There was nothing like that. But why did there need to be a full evidentiary hearing if we know that Robin Duke signed this document using a power of attorney? In other words, the document spoke for itself. Why do we need an evidentiary hearing? Well, to keep one thing to keep in mind is they had an A.G. Edwards account. A.G. Edwards being the predecessor of Wells Fargo going back to 1990. They were subject to arbitration from the beginning of their account. From the beginning, that's simply the way it works, that when you open up an account, part of it you're subject to the financial industry regulatory authority. This was just the most recent account that they signed to make it an advisory services agreement. But that changed the nature of the account substantially as far as how the account was going to be administered. It didn't change the arbitration provision, though. The arbitration provision, again, is going to apply to any sort of activity within the account. It wasn't in the same arbitration provision, was it? It wasn't in a new arbitration provision that was incorporated into this new agreement? That's correct. It would be a new arbitration provision, but any dispute regarding anything in that account would have been covered by arbitration going back to the inception of the account in 1990. And who signed that new agreement? The new agreement was signed by the son, the son Dukes. That's right. But I would argue this is different in the nursing home context. Again, under general estate principles, an estate is going to sue on a contract that the decedent had, could be liable on a contract. Just under those general principles, that is going to apply. And to segue into our other argument, the direct benefits estoppel argument is going to estop anyone from claiming the benefits under a contract and then disclaiming that contract. It's a well-established equitable estoppel principle that you can't sue on something and seek those benefits. And we cite several direct benefits cases. And in this case, there's no doubt that there were several benefits that the estate was seeking to benefit from by virtue of this account. First of all, the establishment of the account. The fact that it was registered with FINRA, could trade stocks and bonds. It dealt with the management of funds. There was an increase in value of the account. Again, these are all benefits that the estate was seeking by trying to get those. And so it can't, it can't, oh, and maybe even most importantly, if you look at the fiduciary duty claim, all the fiduciary duty claim is based upon Brian Kane's actions as a financial advisor. Brian Kane's actions as a financial advisor are governed by that advisory agreement. So the fiduciary duty claim is arising from the advisory agreement. Again, they cannot disclaim, they cannot disclaim that agreement for the parts they want and not accept the entire agreement. And in this case, clearly, yes. Isn't it true under the direct benefits estoppel argument, though, that the person seeking the benefit has to get a direct benefit as opposed to, for example, the estate has to get the direct benefit as opposed to any, just any benefit? There has to be a link to a direct benefit. And I would say there is, Your Honor. Is that the law? Direct benefit, yes. There would have to be a direct benefit. And here there is a direct benefit. And what is that? The direct benefit is the management of the funds that led to this, you know, $600,000 plus amount being in the account. That's what the direct benefit is. They can't seek the benefit of the funds in that account, which, again, were created under this agreement without being subject to that arbitration provision. And along with that — Doesn't the estate have to be the signatory to that? No. No, the direct benefits doctrine is directly addressed to non-signatories. That's the main purpose of the direct benefits doctrine, is to address these situations that are a little bit different, right? Again, if Grace Duke sued during her lifetime, there's no doubt that she would have been subject to it. This situation addresses the pattern that arises when someone is attempting to claim benefits under an agreement, but that person did not sign those. And, again, we cite several direct benefits estoppel cases. It's not a situation that comes up with great frequency, but it is one that has recurred and there is a body of case law that addresses that. And one thing that the trial court got wrong in the analysis is it focused on a third-party beneficiary doctrine, which is a little bit more strict in how you look at the inception of the contract. And we argued all along that direct benefits estoppel is the proper analysis because it is equitable in nature. It reaches these situations, again, to prevent inequity. And, again ---- Can you distinguish for me the Everett v. Paul Davis restoration case on the direct benefit issue? Your Honor, the Evershed case, and I'm sorry, it was that side of our respondents. I'm not sure who cited it, but it speaks to direct benefits versus ---- I believe it's in your brief as well. On page 14. Thank you, Your Honor. Let me just check that. Page 14 will be with the appellate's brief. Thank you. The Everett v. Paul Davis case, did you say? Yes. Can you distinguish that? Yes. So that case, right, was the one with the business franchise, and they looked at whether or not, I believe that was one where the wife had not signed a contract, and they looked at whether the benefit that she had received was such that was so tied to the agreement that her husband signed and the franchise signed that she could be held to the arbitration provision under the direct benefits doctrine. And as I recall, the court in that case reversed the lower court and said yes. I think that's, you know, quite frankly, the direct benefits analysis there is even more attenuated than here. I think the direct benefits analysis here is more straightforward, where you do have this absolute establishment of the account, which leads to the benefit that the estate is seeking. Okay. Thank you. Very good. Our final point was simply that if there are questions of arbitrability, those should go to the arbitrator, and that, again, our arbitration provision is quite broad. Happy to answer any other questions. I'm just not sure how the estate becomes a third-party beneficiary when it wasn't even aware of the transfer on debt documents. Does that play into this at all? It does not, Your Honor. And the reason for that is in response, the plaintiff in this case had said that because they didn't know about it, that it didn't accrue. But that's not the right analysis. The right analysis would be the actions that are being alleged. Did they occur during the lifetime of the decedent? And in this case, they did. So I don't believe that has any distinction in this matter. Okay. Thank you. Do you have some additional time that you would have anything else you wanted to say? Your Honor, I believe that I've covered it, unless there's anything else. Okay. Mr. Martin. Justice Schoen? Yes. Justice Moore? Yes. Okay. That concludes your argument, then, I suppose. Thank you for showing up and submitting yourself to my questions. I never let go of a chance to come down to the district. So thank you. Thank you so much. Thank you. Well, thank you. That concludes the docket for today, and the court will be in recess until tomorrow morning at 9 o'clock.